IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JIMMY WATSON,                              :
                                           :
         Plaintiff,                        :
                                           :
    v.                                     :   Civ. No. 10-978-LPS
                                           :
DEPARTMENT OF SERVICES FOR                 :
CHILDREN, YOUTHS AND THEIR                 :
FAMILIES DELAWARE,                         :
                                           :
         Defendant.                        :

---

Jimmy Watson, Newark, Delaware, Pro Se Plaintiff.

Janice R. Tigani, Kevin R. Slattery, and Oliver J. Cleary, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

## MEMORANDUM OPINION

March 18, 2015
Wilmington, Delaware



STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiffs Jimmy Watson ("Watson" or "Plaintiff") and Sonja L. Taylor-Bray ("Taylor-Bray") (together "Plaintiffs"), filed Civ. No. 10-978-LPS on November 15, 2010, alleging discrimination pursuant to 42 U.S.C. § 1981.[1] The complaint was dismissed upon motion, and Plaintiffs were given leave to amend. (D.I. 42) An amended complaint was filed on April 12, 2012. (D.I. 44) Defendants again moved to dismiss and, on March 26, 2013, the Court ruled on the motions and dismissed the majority of the claims raised. The case as it now stands, proceeds on Watson's Title VII employment claim against Defendant State of Delaware, Department of Services for Children, Youth, and their Families ("DSCYF" or "Defendant"), all other claims and Defendants having been dismissed or granted summary judgment.[2] (*See* D.I. 53, 73). Watson appears *pro se* and has been granted leave to proceed *in forma pauperis*. Presently before the Court is Defendant's Motion for Summary Judgment. (D.I. 85) Watson did not file an opposition to the motion. For the reasons that follow, the Court will grant the motion.

## II. BACKGROUND

Watson was formerly employed by the DSCYF as a youth rehabilitation counselor at the New Castle County Detention Center in Wilmington, Delaware. (D.I. 44) Watson, who is black, alleges in the Second Amended Complaint that he was subjected to race discrimination and

---

[1]Taylor-Bray filed a second case against DSCYF and others, Civ. No. 12-019-LPS, alleging discrimination, and the cases were consolidated. (*See* D.I. 53) After all claims were dismissed (except the of Title VII employment discrimination claims), the Court withdrew the consolidation of Civ. Nos. 10-978-LPS and 12-019-LPS, and each case now proceeds under its individual caption. (*See* D.I. 73)

[2]The Clerk of Court will be directed to correct the court docket so that it reflects that no claims in this case remain pending on behalf of Taylor-Bray.

1

retaliation in the forms of suspension, discharge, and harassment. His charge of discrimination states that he was accused by Superintendent Mitchell Rock ("Rock"), who is white, of sexually harassing female students.

Rock suspended Watson on May 29, 2009, pending an investigation. (*See* D.I. 44 at Charge of Discrimination 17C-2020-00069) Following the investigation, Watson returned to work and Rock required Watson to undergo new employee training despite his twelve-year employment with DSCYF. Watson was discharged from his employment on September 29, 2009 after he witnessed an incident and failed to write an incident report. Watson reported Rock's harassment to his supervisor and the union. Watson alleges that Rock engaged in systemic racism in the workplace; that DSCYF failed to follow proper procedures or investigate his claims prior to his discharge; and that Rock failed to follow DSCYF's procedures or the collective bargaining agreement in his discharge. Watson filed a charge of discrimination on December 23, 2009, and a notice of right to sue was mailed to him on August 26, 2010.

The record reflects that an investigation ensued after a female resident accused Watson of touching her in appropriately on or about May 28, 2009. (D.I. 87 at A2) Watson was placed on paid leave pending the investigation of the alleged sexual misconduct. (*Id.*) The matter was investigated by Institutional Abuse Investigator Mike Zuka ("Zuka"). (*Id.* at A14-18) No criminal charges were pursued against Watson, and the investigation was closed as "unsubstantiated with concerns." (*Id.* at A2, A14-18) Watson was sent to retraining following his return to work. (*Id.* at A19) Rock explains that he routinely sent staff members for retraining and that he sent Watson to retraining after consulting with DSCYF Human Resources and because of concerns uncovered during the investigation. (*Id.* at A2, A7, A19)

The record reflects that Watson was terminated from his employment on October 18, 2009 for failing to report physical violence towards an incarcerated youth by another staff member. (*Id.* at A21-43). The unreported incident occurred on September 5, 2009. (*Id.* at A21) Zuka investigated this matter as well and found that Watson: (1) refused to provide a statement regarding what occurred; (2) failed to write an incident report, advise a supervisor of the incident, or take the injured youth to medical; and (3) threatened other youth with restraint while the incident was occurring. (*Id.* at 50-51) Watson was notified via letter of his recommended termination on the grounds that he failed to: (1) verbally report the incident; (2) make a written incident report until directed to do so; (3) have the resident examined by the medical department; and (4) administer sanctions to the resident if his behavior warranted a physical restraint. (*Id.* at 34) Watson's co-worker. who was involved in the September 5, 2009 incident, and an employee, who assaulted a resident in a separate incident, were discharged during the same week. (*Id.* at A3, A52-53)

Watson was provided with pre-termination procedural due process as required by the union Local 2004 collective bargaining agreement and the State of Delaware Merit Rules. (*Id.* at A21-43) Watson filed a grievance and a two-day binding arbitration hearing was held in July and August 2010. (*Id.*) A written decision, dated October 5, 2010, upheld the denial of Watson's grievance, finding that he violated four DSCYF policies and that he had been discharged for just cause. (*Id.* at 39-43)

The Second Amended Complaint refers to Gerald Tomczyk ("Tomczyk"), Kim Simpson ("Simpson"), Donald McIlvain ("McIlvain"), John Longo, Sr. ("Longo"), and Mike Mahon ("Mahon"). (D.I. 44 at 3) Tomczyk was employed at a different facility than Watson, had a different supervisor, and was disciplined for acts of a different nature (D.I. 87 at A93-94); Simpson was employed at a different facility than Watson, had a different supervisor, and was disciplined for

3

acts of a different nature (*id.* at A93); McIlvain was employed at a different facility than Watson, held a different position, had a different supervisor, and was disciplined for acts of a different nature (*id.* at A93); Longo was employed at a different facility than Watson, had a different supervisor, and was disciplined for acts of a different nature (*id.* at A3-4); and Mahon held a different position than Watson, reported to a different supervisor, and – although alleged otherwise by Watson – there are no records that Mahon was involved in an incident of leaving residents unsupervised (*id.* at A93).

III. **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Watson did not file a response to Defendant's motion. The Court, however, will not grant the entry of summary judgment without considering the merits of Defendant's unopposed motion.

*See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that district court should not have granted summary judgment solely on basis that motion for summary judgment was not opposed).

## IV.   DISCUSSION

Watson alleges race discrimination, termination, and retaliation pursuant to 42 U.S.C. § 2000e, *et seq.* Watson filed an EEOC charge against the DSCYF asserting discrimination and retaliation by reason of race and that this occurred through suspension, discharge, and harassment.

Defendant moves for summary judgment on the grounds that Plaintiff failed to: (1) provide valid comparators; and (2) establish that the reasons proffered for his termination were pretexts for discrimination on the basis of race.

### A.   Discrimination

Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff may prove race discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Because there is no direct evidence of discrimination, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Watson must first establish a prima facie case of race discrimination by proving that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated

person not of the protected class is treated differently. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). The elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing his prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (quoting *Fuentes*, 32 F.3d at 764 (internal citations and other citations omitted).

DSCYF argues that Watson failed to establish that the discipline imposed while he was being investigated for sexual misconduct and termination for violating work rules occurred under circumstances giving rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. To make a comparison of Watson's treatment to that of an employee outside his protected class for purposes of a Title VII claim, he must show that he and the employees are similarly situated in all relevant respects. *See*

*Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. Dec. 8, 2009) (citations omitted). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *See id.*

In a severance case, the relevant factors may include the positions held, policies or plans in effect, the decisionmakers, and the timing of the separation. *See id.* at 655 (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54-55 (2d Cir. 2001) (plaintiff established she was similarly situated to colleague who received more money in severance where two employees "held positions of roughly equivalent rank . . . were fired at roughly the same time, [and] the decisions with respect to the severance were both made at the highest levels of the company"). Watson is not required to show that he is identical to the comparator in each relevant factor, "but he must show substantial similarity." *Id.* (citation omitted). Accordingly, in order to establish an appropriate class of similarly situated comparators, Watson must identify employees who share characteristics that are relevant to the facts of this case.

In the instant case, the five individuals to whom Watson compares himself are not similarly situated. The individuals were either employed at different facilities, had different supervisors, were disciplined for acts of a different nature, or held different positions. In light of the foregoing, the Court finds that Watson has failed to meet his burden to adduce evidence from which a reasonable factfinder could find he established a prima facie case of race discrimination.

Assuming arguendo that Watson had established a prima facie case of discrimination, Defendant has provided legitimate, nondiscriminatory reasons for its decisions to suspend him with pay and require retraining and terminate him. The evidence and documentation indicates that Watson was being investigated following allegations of sexual misconduct and that he was terminated based another incident for violations of numerous DSCYF policies. Watson disputed

the charges, filed a grievance, and went to arbitration, where the arbitrator found in favor of DSCYF, finding that it had just cause to discharge Watson. The arbitration decision finding just cause for Defendant's termination of Watson is evidence that Defendant satisfied its burden at stage two of the *McDonnell Douglas* burden-shifting framework. *See Jasany v. United Postal Serv.*, 755 F.2d 1244, 1252 (6th Cir. 1985) ("While the outcome of an arbitration decision in favor of the employer is not dispositive of a Title VII suit of whether there was discrimination, an arbitration decision in favor of the employer is sufficient to carry the employer's burden of articulating some legitimate, nondiscriminatory reason for the employee's rejection.") (internal citation, quotation marks, and emphasis omitted).

There is nothing before the Court that contradicts the proffered reason for Watson's termination. Nor are Defendant's proffered reasons for its actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003). Construing the evidence in the light most favorable to Watson, he has not provided evidence from which a fact finder could either disbelieve Defendant's articulated reasons, or believe that a discriminatory reason was more likely than not the cause of the employment actions. Therefore, the Court will grant Defendant's Motion for Summary Judgment.

**B.** **Retaliation**

The complaint alleges retaliatory action was taken against Watson. The elements of retaliation claim are that: (1) plaintiff engaged in protected activity; (2) the employer took a materially adverse action against him; and (3) there was a causal connection between the protected activity and the employer's action. *See LeBoon v. Lancaster Jewish Comty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007).

9

A materially adverse employment action is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (citation and internal quotation omitted). Whether an action is materially adverse "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.*

With respect to the causation prong, the Court considers whether a reasonable jury could link the employer's conduct to retaliatory animus. *See Moore*, 461 F.3d at 342 ("[T]he ultimate question in any retaliation case is an intent to retaliate . . . .") (internal citation omitted). In assessing this, the Court considers the "temporal proximity" between the plaintiff's protected activity and the employer's allegedly retaliatory response, and "the existence of a pattern of antagonism in the intervening period." *Id.* at 450 (quotations and citations omitted). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient)).

While not clear, it appears that Watson claims retaliation occurred when he was suspended with pay during the investigation of the alleged sexual misconduct and when he was discharged following the September 2009 incident. No evidence was presented to establish a prima facie case of retaliation. Even assuming arguendo that Watson had established a prima facie case of retaliation, DSCYF proffered legitimate, non-retaliatory reasons for the actions it took. Watson was accused of sexual misconduct and the matter was being investigated. While the investigation took

10

place, Watson was on paid administrative leave. With regard to his termination, Watson was found to have violated several work rules. Defendant's proffered reasons for the actions it took are not so weak, incoherent, implausible, or inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003).

The Court finds that no reasonable jury could find for Watson on the retaliation issue. Therefore, the Court will grant Defendant summary judgment on the retaliation issue.[3]

## V. **CONCLUSION**

For the above reasons, the Court will grant DSCYF's Motion for Summary Judgment (D.I. 85).

An appropriate Order follows.

---

[3] "It has long been established that, under the right circumstances, district courts are entitled to enter summary judgment sua sponte." *Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006) (quoting *Gibson v. Mayor and Council of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004)). This may not occur, however, "without 'placing the adversarial party on notice that the court is considering a sua sponte summary judgment motion' and providing that party 'an opportunity to present relevant evidence in opposition to that motion.'" *Coudon*, 446 F.3d at 500 (other citations omitted). Notice is satisfied if "the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Id.* (other citations and quotation marks omitted). The Court is satisfied that Watson had reason to believe it would reach the issue of retaliation given that the issue is intertwined with Watson's allegations of termination by reason of race discrimination.

11